RALPH R. GREER & Co. *v.* McGINNIS ET AL.

[Cite as Ralph R. Greer & Co. v. McGinnis, 6 Ohio Misc. 264.]

(No. 176549—Decided August 23, 1965.)

CONTRACT: Columbus Municipal Court.

*Messrs. Applegate and Giovanetti,* for plaintiff.
*Messrs. Boehm and Rance,* for defendants.

SATER, J. At all times mentioned herein the plaintiff company was duly licensed to engage in the real estate business in Ohio; and at all relevant times mentioned herein the defendants owned two residential properties, with an extra vacant lot abutting the rear, on West Henderson Road in this county. Two of the plaintiff's salesmen were Ruth Groeniger and Jean Parker. Both of these ladies were duly licensed real estate agents, but neither they nor the plaintiff were attorneys at law.

Plaintiff has sued defendants for a claimed $810.00 commission (and costs of this action) asserted to be due it from the defendants for procuring a buyer ready, willing and able to purchase a portion of defendants' above described real estate. Issue being made by defendants' answer, full trial was had to the court without a jury, and counsel have submitted ample briefs supporting their respective positions. The court has given close study to the testimony, and various exhibits and the briefs. Determination of the case does not require presentation or discussion here of all of the testimony and exhibits; consequently only the material parts and portions will be here discussed. Let it be noted that plaintiff's exhibits were identified by Arabic numerals, defendants' by letters of the alphabet.

Defendants were "dickering" with West Brothers for the sale of the extra vacant lot abutting the rear of their two stated premises, but were obviously so far apart in price that consummation of such a sale was very nebulous. As to sale of the residential properties, defendants needed help. How defendants and plaintiff came together is none too clear, but suffice it to say that they did. Ruth Groeniger was the first of plaintiff's agents to have contact with defendants, and Jean Parker from time to time had relevant and material contact with them.

On or shortly before June 27, 1963, defendants explained to Groeniger that they themselves were dealing directly with West Brothers concerning the sale of their extra rear vacant lot, and that the help of plaintiff was wanted at least primarily with regard to the two front lots facing on West Henderson Road. Exhibit 2 shows that on that date defendants signed, and plaintiff through Groeniger accepted a 120 day exclusive listing of the two residential properties setting a six percent commission for plaintiff and a sale price of $37,500.00. The listing paper is a standard printed form with lines and space at the top for the street address or other concise location description of the premises for sale, and thereunder various printed words designed to give a "thumb nail" description of the premises together with or without any or all of the facilities forming parts of those premises, all such printed words being so set down that a simple check mark before or absent from each would give the reader a quick idea of all good and bad points. Oddly, at the bottom of the right hand column, rather than at the top of the paper, is written the inked words "Extra Lot Available," it being the vacant lot over which defendants were dealing directly with West Brothers. Were it necessary to a decision of this case, it would be that this unusual placement of these three words was no less than prima facie evidence on the record before us that this "Extra Lot" was in the category of the tail that goes with the hide, saleable by plaintiff provided it went as a part of the sale by them of the two residential properties named by street address on West Henderson Road appearing at the top of the listing sheet.

Quiet prevailed for a few days until on August 10, 1963, Jean Parker presented Exhibit 3 to defendants for their signature. That this exhibit is the key to plaintiff's case is illustrated by the fact that only this of four plaintiff exhibits is attached to plaintiff's petition.

Exhibit 3 is a standard single page printed form real estate purchase and sale contract with plaintiff's name imprinted at the top. Since it was clearly signed at the bottom by defendants long before a buyer was obtained, it is simply an offer to sell. A few lines above defendants' signatures is plaintiff's counter-signature by Jean Parker, but there is on this side of the paper no signature of the acceptor-buyer. The paper stat-

edly relates to sale of only the extra vacant lot for $12,500.00 cash at time of closing, and does not refer to the two Henderson Road residential properties at all. This paper has on its face many blank spaces and lines for filling in such matters as dates, property location, price, possession time, taxes, insurance coverage, closing date, etc. Ordinarily, much if not all of these matters could probably be filled in by any ordinary scrivener. However, below the bulk of the printing and shortly above plaintiff's counter-signature, the following appears after the word "REMARKS:"

"This contract contingent upon Grantor (sic) acquiring Ed Lantzs property. Also upon above mentioned ground being rezoned to AR-1. If zoning is not obtained within 120 days of acceptance of this contract then this contract is null & void unless extention is mutually agreed upon by Grantor & Grantee."

Further, immediately above defendants' signatures at the bottom, we find,

"This contract accepted subject to conditions on reverse side hereof."

All of the blank spaces and lines are hand-written in ink, obviously not the handwriting of defendants.

The reverse side of this paper form is ordinarily a blank, but above the hand-written signatures of defendants and Charles L. West on this Exhibit 3 we find the following all hand-written in ink mostly in the same hand as appears on the face:

"Items below are a part of contract on reverse side.

1. Trees & Shrubs on ground shall be available after transfer of Title for Grantee to either move or leave on property for Grantor until Jan. 1, 1964.

2. Small building on north lot line shall be moved at Grantors expense to a point more usable on front portion of Grantees ground.

3. Grantor shall install at his cost water & sewer line to Grantees 2 houses on front portion of ground.

x
x
x
x

We accept the above contract with the following changes. Purchase price to be $13,500. It is further understood there

is to be concrete footer to frost line & block to building & stone floor on small building to be moved.

It is understood the         x Donald E. McGinnis
closing date will be         x Ruth McGinnis
150 days from this           x Charles L. West
date.                        x                      ''

This paper was statedly drawn up as we find it above by plaintiff's salesman, Jean Parker. The quotations set out just above go far beyond mere scrivening and constitute an unauthorized practice of law.

Exhibit 4 is a purchase and sale contract form imprinted ''West Brothers Construction'' xed out by typewriter, changes the purchase price to $13,500.00, and is signed by defendants and West Brothers Construction by Charles L. West on December 17, 1963; its reverse side contains much the same conditions as are quoted above from Exhibit 3. But nowhere on this document is there any reference at all to plaintiff. Consequently, it can be presently of no assistance to plaintiff, especially since its origin is unknown.

Exhibit D is defense counsels' written attempt to straighten out the garbled conditions to the sale, but is meaningless by itself, though signed by defendants and both brothers West with their wives, without reference back to void Exhibit 3 and useless Exhibit 4. Like Exhibit 4, Exhibit D makes no reference at all to plaintiff, and is therefore useless to it.

This covers the exhibits and all relevant portions of the testimony. Judgment may be entered for defendants. *Martineau* v. *Gresser,* 88 Ohio Law Abs. 550, 559, 561-567; *Collacott Realty, Inc.,* v. *Homuth,* 28 Ohio Law Abs. 211. For general back-ground, see *Re Unauthorized Practice in Franklin County.* 22 Ohio Law Abs. 598, 600, aff'd. 58 Ohio App. 79; *Land Title Abstract & Trust Co.* v. *Dworken,* 129 Ohio St. 23; *Judd* v. *City Trust & Sav. Bank,* 133 Ohio St. 81; *Otto* v. *Patterson,* 115 Ohio App. 181, aff'd. 173 Ohio St. 174; *Unauthorized Practice of Law in Cuyahoga County,* 175 Ohio State 148; *Green* v. *Bank,* 3 Ohio App. 2d 62 (Ohio Bar, July 19, 1965).

Were it necessary to a determination of this case (but it is not) we would rule that the language on the backs of Exhibits 3 and 4, separately or together, are such a shambles of confusion, e.g., between ''Grantor'' and ''Grantee'' as to be unenforcible.