**ESTEY et v GREENVILLE (city)**

Ohio Appeals, 2nd Dist, Darke Co

No 514. Decided March 26, 1937

Orel J. Myers, Greenville, and Roger J. Stormont, for plaintiffs-appellees.

Murphy & Staley, Greenville, for defendants-appellants.

646

## OPINION

By HORNBECK, J.

This is an appeal of the defendant in the trial court on a question of law from a judgment in behalf of the plaintiffs in the sum of $1000.00. We refer to the parties as they appeared in the trial court.

The original petition was filed July 2, 1934; an amended petition was filed December 5, 1935; an amended supplemental petition filed January 13, 1936.

The amended petition averred that a water course known as Greenville Creek passed through and over the land of Harvey Estey, plaintiff; that since December 10, 1930 the plaintiff owned a dwelling house, barn and other buildings located upon the real estate described which dwelling house he has used for a home and that the lands described were used for agricultural, stock, poultry and pasture purposes; that Greenville Creek in its natural condition was a flowing stream containing pure and wholesome water and that prior to the grievances asserted was such a stream; that prior to December 10, 1930 defendant constructed a sewage system, underground pipes and tiles, which carried off the contents and wastes from toilets used by the inhabitants of the City of Greenville into said creek and down and over the plaintiff's land; that the sewage discharged into said creek and running onto and through the lands of the plaintiff had so polluted the water thereof as to make it unfit for the use of the plaintiff in carrying on the operations incident to farming his land.

The plaintiff prayed for damages in the sum of $7500.00.

The amended supplemental petition set forth the continuance of the nuisance plead in the amended petition from the date of the filing thereof until the date of the filing of the supplemental petition.

The answer of the defendant set up five defenses: First, in substance, a general denial; the second, that defendant had a prescriptive right to the use of Greenville Creek as a place of disposal of its sewage on and to the lands of plaintiff; third, that the polluted condition of the water of which the plaintiff complained, if it existed, was caused by the operation of named industrial establishments which discharged the waste from the operation of their plants into the waters of Greenville Creek above the lands of the plaintiffs; fourth, that the plaintiffs themselves contributed to the condition complained of by the feeding and pasturing of an inordinate number of cattle and hogs and other live stock on their farm, the refuse from said operations being carried directly into the waters of Greenville Creek; fifth, that the plaintiffs were estopped to assert a cause of action against the defendant because they purchased the lands in question after knowledge of the condition of which they complained. The transcript of docket and journal entries does not show that any reply was filed but the issues were presented as though such a pleading had been filed. The cause was tried to a judge and jury, resulting in a verdict for the plaintiff in the sum of $1000.00. Five interrogatories were submitted to the jury upon the request of the defendant, to all of which answers were returned with the general verdict. Motions for new trial and for judgment non obstante veredicto were filed, both of which were overruled and judgment entered on the verdict. An appeal on questions of law is prosecuted.

Sixteen grounds of error are assigned. Those urged have been epitomized in the brief of counsel for defendant under four headings: first, those relating to the ruling of the court on admission and exclusion of evidence; second, refusal of the court to give defendant's special charges Nos. 3 and 4 before argument, the refusal to charge the jury as requested by defendant at the conclusion of the general charge and error in the general charge; third, error in the returning of the verdict, namely, that it was stimulated by passion and prejudice, was against the weight of and contrary to the evidence and contrary to law; that the answers to the special interrogatories were not supported by the evidence and contrary to the manifest weight thereof, and that the answers to the special interrogatories were inconsistent with the general verdict; fourth, error in refusing to sustain the motion for judgment non obstante veredicto.

Objection is urged to the reception of certain testimony of the plaintiff, which we shall not set out because we are satisfied that if any of it was improperly admitted it did not result in prejudice to the defendant.

Objection is also made to the receptino of certain testimony of Miles G. Demorest and the introduction of plaintiffs' Exhibit "J" through him. The witness said that shortly prior to 1918 he was a member of Council, two years as its President and about the year 1918 was Service Director

of the City of Greenville for four years. He was permitted to testify very meagerly, indeed, stating in substance that as Service Director he had charge of the water works and also of the sewage disposal system. After several pages of questions and objections which were sustained, these questions were propounded and answers permitted to be given.

"Q. Whether or not, Mr. Demorest, you at any time about 1918 went to Columbus to the State Board of Health in your capacity as City Service Director with reference to a disposal plant for the City of Greenville?

A. I did.

Q. Tell the jury what was done at that time, if anything, while you were at Columbus?

A. As I remember it we was given an extension of time.

A. As I remember we were contemplating putting in some new sewers, and it was.—they granted us an extension of time on account of the putting in of these sewers.

Q. Extension of time for what, Mr. Demorest?

A. Building the disposal plant."

Plaintiff's Exhibit "J" introduced through this witness was a report and opinion of referee Engineers in controversy between the State Board of Health and the City of Greenville, Darke County, Ohio, and was signed: "A. Elliott Kimberly, Referee Engineer; Paul Hansen, Referee Engineer."

The purpose of this testimony was well defined and well limited. The record. by exhibits and other testimony, disclosed the history of the difficulty between the State Board of Health and the City of Greenville. arising out of the operation of the Greenville Sewage System, the promulgation of the order of the Board of Health to build a new sewage system, the refusal of the city to observe it and the aftermath thereof. Much of this subject matter also came from other sources without objection. As a chain in the developments incident to the controversy we are of opinion that the testimony █ was admissible. However, if upon strict construction it had not been admissible to meet the claim of adverse user of the defendant, the record discloses that it was not prejudicial.

The court in the general charge at the bottom of page 1003 and top of page 1004, in charging the defense of prescription, said to the jury that upon this issue the burden was upon the defendant to prove that the city had used the creek for disposition of its sewage for more than twenty-one years and that if so proven the plaintiff would not be entitled to recover "unless you further find from the evidence that during the early part of this period of twenty-one years there was either no pollution or some pollution of the stream by such city which has gradually grown worse until the filing of the petition and that the conditions relative thereto have so changed that such pollution is substantially worse than what it was formerly, * * *." The court said nothing whatever except in a general way in defining the elements of prescription respecting the effect of any evidence offered by the plaintiff to meet the claim of the defendant of adverse user. The jury answered special interrogatory of defendant, No. 6, in the negative. which interrogatory not only set out the elements of prescription, namely, the open, notorious, continuous and adverse character of the user, but also its use in substantially the same manner and to substantially the same extent as on July 2, 1913 or earlier. Thus, the burden was placed upon the plaintiff to prove, as against the defense of prescriptive use of the creek, that the pollution caused by the sewage in the stream substantially differed from and grew worse than it was in 1913 or before. So the testimony which was offered through Mr. Demorest, if it had a tendency to prove that on or about 1918 the use of the stream was permissive rather than adverse, could not have changed the verdict.

Refusal of the court to give defendant's special charges Nos. 3 and 4.

Defendant requested the court before argument to give five special requests. The court gave Nos. 1, 2 and 5 and refused Nos. 3 and 4. To this refusal error is assigned. Special request No. 3 read:

"The court instructs you as a matter of law that the plaintiff, Mr. Estey, had no right to voluntarily or willingly place himself in a situation by which he would suffer injury or damages on account of any act of the city which would amount to a nuisance to him, if at the time he so placed himself in such situation he knew of the existence of the nuisance or conduct of which he now complained. Therefore, if you find by a preponderance of all the evidence in the case that Mr. Estey, at the time he acquired title to the lands in ques-

tion, knew of the existence of the sewer outlet, of which he now complains, and the use the city of Greenville was then making of it, as well as the probability of its continuing such use, he cannot now be heard to complain, and your verdict should be in favor of the defendant."

Special request No. 3 is not the law. One who acquires property does not thereby waive his right to recover damages to that property from a nuisance such as here considered created by another. The court properly so charged the jury in the general charge.

For this defense of estoppel we are cited to one Ohio case only, **Steele v Rail & River Coal Co., 42 Oh Ap 228 (12 Abs 424)** and particularly Syllabus 8 in the discussion relative thereto:

"Purchaser who had occupied home before buying it was chargeable with knowledge that nearby coal mine refuse pile was potential nuisance."

The distinction to be made between the cited and the instant case is that there the court was treating coal mining, defined as a natural user, as contrasted with what is known as an artificial user.

At page 243 the distinction is noted and commented on. A natural user is defined as:

"The use for which nature fitted his land and intended it should be used."

It may not be successfully urged that the drainage of untreated sewage into a public water course by a city is a natural user of the city's own property nor that the resulting injury would be damnum absque injuria.

Special request No. 4 was also properly refused, because it included a legal proposition that if the plaintiff contributed in the slightest degree to the pollution of Greenville Creek he could not recover anything. The court properly charged that if he had contributed to the pollution of the stream his damages, if any suffered, would be diminished to that extent.

Complaint is made in the general charge in that the court placed the burden of proof on the defendant to establish its prescriptive right to use the stream for disposal of sewage instead of saying to the jury that the proof of this defense must appear by a preponderance of all of the evidence in the case. This objection is not well taken. The language of the court is in the usual form and we are satisfied was not prejudicial.

Objection is also interposed to that part of the general charge at page 1007, as follows:

"If, however, you find by a preponderance of the evidence that plaintiff has established the essential and material averments of his petition and that defendant has failed to establish by a preponderance of the evidence a prescriptive right to so use said stream, and you find that from the causes and conditions set forth in the petition and the law as given you by the court that plaintiff has suffered any special substantial damage, etc."

It is urged that the court took away from the jury any right to consider the special defenses asserted in the amended answer other than prescription. It is true that the court took from the jury the defense of estoppel but the court also removed from the defendant any burden of proof as to all its other defenses, save that of prescription. In this situation the charge of the court was correct.

Objection is made to the negative answer to interrogatory No. 4:

"No. 4: Do you find that Mr. Estey's feeding-pens or barn lots in which he has conducted his stock-feeding enterprises have a natural surface drainage into Greenville Creek?"

We have examined Mr. Estey's testimony and cannot say that the jury drew a conclusion counter to the import thereof. However, an affirmative answer to the interrogatory would not have required a different verdict, inasmuch as it would have been necessary that the jury further find that the drainage from the feeding-pens or barn-lots of Mr. Estey contaminated or polluted the water in the stream through the premises of plaintiff and causing some of the damages of which plaintiff complained.

It is urged that the verdict and judgment are not supported by and are manifestly against the weight of the evidence, that the amount of the verdict is excessive and that its return was stimulated by passion and prejudice. We find none of these

claims supported. On the contrary, in our judgment the verdict is amply supported by the evidence.

Defendant urged to the jury and presents here the claim that the use to which the stream was put as a means of disposal of sewage from the City of Greenville had not been materially changed since its establishment. The jury was well within its province in concluding that ██ there had been very marked increase in the sewage which was thrown into the stream and a very substantial change in the extent of the user. It was testified that the flow from all the toilets, bathrooms, kitchen sinks and many of the basements connected to the sewer was carried off by it. The increase in the number of persons taking this sewer was substantial and the enlarged use of these improvements incident to modern sanitation, is well known and the jury had the right to recognize it.

The amount of the verdict is small as compared with a sum which the jury could have assessed under the evidence. All phases of proof incident to the plaintiffs' case and the special defenses of the defendant were thoroughly presented to the jury. The amount of the verdict is convincing that the cause of the City of Greenville was well protected and that eminent counsel rendered capable and effective service. We would not have been at all surprised, nor would the conscience of the court have been shocked, had the verdict been many times greater than the one returned.

The charge of the court was especially clear upon issues that were rather technical and difficult. It was understandable and correct. No error prejudicial to the defendant appears in this record.

The judgment will be affirmed.

BARNES, PJ, concurs.
GEIGER, J, not participating.